IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROBERT L. QUINN                                                                                    PLAINTIFF

        v.                            Civil No. 11-3070

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                  DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      Plaintiff, Robert Quinn, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

      The Plaintiff filed his application for DIB on February 2, 2004, alleging an amended onset date of May 1, 2005,[1] due to back and neck pain, depression, and chest and shoulder pain. Tr. 10, 118-119, 162, 164-165, 198, 268-269, 271-273, 410-411. His application was initially denied and that denial was upheld upon reconsideration. Tr. 18-19, 21-24, 44-46, 57-58. Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ"). An administrative hearing was held on December 6, 2006, and resulted in an unfavorable decision on March 12, 2007. Tr. 7-17, 264-344, 661-744. The matter was appealed to this court, and ultimately remanded back to the agency on January 13, 2010. Tr. As Plaintiff had filed a new application for DIB on December 18, 2008, this application was included in the

---

[1] Plaintiff originally alleged January 31, 1991, as his onset date. However, at the hearing, this date was amended due to plaintiff's earnings records. Tr. 268-269, 615.

remanded claim. And, a second administrative hearing was held on September 9, 2010. Tr. 607-660. Plaintiff was present and represented by counsel.

At this time, Plaintiff was 45 years of age and possessed the equivalent of a high school education. Tr. 268, 271, 443, 613, 630, 668. He had past relevant work ("PRW") as a dump truck driver, swimming pool pump technician, maintenance worker, and boat factory worker. Tr 16, 119-120, 146, 148-155, 204, 237, 279-280, 412-419, 616-619.

On April 27, 2011, the ALJ found that Plaintiff's degenerative disk disease status pos laminectomy and depressive disorder were severe, but did not meet or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 350-352. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity to perform sedentary work involving occasional climbing, balancing, stooping, kneeling, crouching, and crawling and work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct, and concrete. Tr. 352-358. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a production worker/final bench assembler for optical goods and hand packer. Tr. 358-359.

Subsequently, Plaintiff filed this action.[2] ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 7, 9.

---

[2]When-as here-an action has been remanded previously for further consideration, a claimant dissatisfied with the ensuing decision may elect not to file exceptions. If the Appeals Council does not review the case *sua sponte,* the decision becomes the Commissioner's final decision after sixty days. 20 C.F.R. § 404.984(d) (2004). The claimant may then institute an action for judicial review.

The court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' appeal briefs and the ALJ's decision and are repeated here only to the extent necessary.

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

**Discussion**

Plaintiff contends that the ALJ erred in concluding that he was not disabled because: 1) the ALJ erred in concluding that Plaintiff did not meet listing 1.05, 2) the ALJ erred in failing to propound an accurate hypothetical to the vocational expert at the hearing, 3) the ALJ erred by faulting Plaintiff for failing to seek consistent medical treatment when he had no money to do so, and 4) the ALJ's decision is not supported by substantial evidence

In his first argument, Plaintiff asserts that his back impairment meets Listing 1.05C. However, the undersigned believes Plaintiff is actually asserting that he meets the requirements of Listing 1.04C, which applies to lumbar spinal stenosis. To meet a listing, an impairment must meet all of the listing's specified criteria. *Carlson v. Astrue*, 604 F.3d 589, 592-593 (8th Cir. 2010). To establish equivalency, Plaintiff must present medical findings equal in severity to all of the criteria for the most similar listed impairment. *Id.*

> Listing 1.04C requires the following:
>
> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04C. Social Security regulations define "inability to ambulate effectively" as an extreme limitation of the ability to walk, such that the individual has insufficient lower extremity functioning to permit independent ambulation without the use of a handheld assistive device(s) that limits the functioning of both upper extremities. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b1. Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine activities such as shopping, and the inability to climb a few steps at a

4

reasonable pace with the use of a single hand rail. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b2.

To support his argument, Plaintiff relies on records from Dr. Kendrick, indicating that he had no motion in his lumbar spine, suffered from hip esthesia of the L5 dermatone, and exhibited sluggish reflexes. Tr. 247. However, we can discern no evidence of record to indicate that he required assistive devices to ambulate. No physician prescribed a cane, crutch, or walker for him, and Plaintiff did not testify that he used any assistive device. In fact, Dr. Kendrick noted that Plaintiff's MRI showed only mild degenerative disc disease, with no evidence of herniation or neural encroachment. Tr. 244. In his opinion, this was not consistent with Plaintiff's subjective complaints. Tr. 247. Plaintiff's own admission that he frequently goes for walks in the woods also undermines his attempt to meet the requirements of this listing, as walking in the woods involves traversing uneven surfaces.

Plaintiff also relies on his hearing testimony that his hands went numb, causing him to drop things and lose his grip. Tr. 628. However, there is no objective evidence to support his complaint of hand weakness. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). In fact, he reported involvement in activities including clearing brush on his friend's property, preparing simple meals, driving a vehicle, and fishing. Tr. 629-630. Accordingly, we find substantial evidence to support the ALJ's determination that Plaintiff's condition does not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

Next, Plaintiff contends that the hypothetical question posed to the vocational expert was flawed because it did not include the following limitations: being off pace 3 minutes per day due to pain, missing one to two days of work per month, a global assessment of functioning ("GAF") score of 35, depression and concentration difficulties, and foot and ear pain. "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004). The question must include all the claimant's impairments

5

supported by substantial evidence in the record as a whole. *Id*. However, the hypothetical question need only include those impairments which the ALJ accepts as true. *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991).

In the present case, we find that the hypothetical question posed by the ALJ included all of the limitations that were supported by substantial evidence and accepted as true. The limitations Plaintiff contends should have been included were assessed by Dr. Vann Smith, a neuropsychologist who saw Plaintiff on only one occasion. By his own admission, Dr. Smith's assessment was based solely on Plaintiff's subjective complaints and was conducted for the purpose of supporting Plaintiff's pursuit of disability, rather than for treatment. *See Shannon* v. *Charter*, 54 F.3d 484, 486 (holding that medical opinions may be discounted when the plaintiff's encounters with doctors in question appear to be linked primarily to his quest to obtain benefits, rather than to obtain medical treatment). And, Plaintiff admitted to Dr. Smith that he had no previous history of treatment for mental impairments. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

We also note that Dr. Smith's assessment is somewhat internally inconsistent and does not include the actual results of the tests administered, rather contains only a summary of those results. He indicated that Plaintiff's judgment and insight were intact, his narratives logical and informative, and his IQ within the average range of intellectual functioning, yet he diagnosed him with cognitive dysfunction. Further review of Dr. Smith's assessment indicates that his diagnosis relies heavily upon Plaintiff's own report of a motorcycle accident in 2000, after which he was reportedly in a coma for 6 days. There is, however, no objective medical evidence in the record to corroborate Plaintiff's reports. *See Kirby*, 500 F.3d 705 at 709 (holding that the ALJ may give less weight to a medical opinion that is based largely on subjective complaints rather than on objective medical evidence). And, a CT scan of

his head conducted in July 2010, revealed nothing abnormal, aside from an abnormal left ear.[3] Tr. 566.

Further, a subsequent mental evaluation by Dr. Charles Nichols indicated that the tests administered by Dr. Smith were outdated. Tr. 487-492. And, while Dr. Nichols' evaluation left open the possibility of some mild cognitive deficits secondary to his depression, he found nothing severe enough to be detected by the assessment methodology. In fact, Dr. Nichols determined Plaintiff had the cognitive resources to perform basic work-like tasks. *See Howe v. Astrue*, 499 F.3d 835, 840-841 (8th Cir. 2007) (ALJ may dismiss even a treating physician's assessment if it is contradicted by or inconsistent with other evidence in the record). This is supported by Plaintiff's own admission that he continued to work, albeit it sporadically, after his alleged onset date. Tr. 619-622. Social Security regulations specify that, absent a showing of deterioration, working after one's alleged disability onset date is evidence of an ability to work. *See* 20 C.F.R. § 404.1571 (even if the work is not substantial gainful activity, it may show that the claimant is able to do more work); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (it is proper for an ALJ to consider employment after the alleged onset of disability; working generally demonstrates an ability to perform substantial gainful activity); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (claimant worked for years with her impairments).

Dr. Nichols diagnosed Plaintiff with depressive disorder not otherwise specified with a GAF of 55. Tr. 491. A GAF of 55 is indicative of only moderate symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). However, a particular GAF score does not warrant a finding of disability because it only applies to the date in the medical report in which it is noted. 65 Fed. Reg. 50746, 60764-65 (August 21, 2000). We find this to be particularly true here, where the psychologist also concluded that Plaintiff's cognitive, interpersonal, and communicative skills; immediate auditory memory; concentration and sequencing skills; delayed recall; basic arithmetic

---

[3]This scan also undermines Plaintiff's contention that he suffers from some form of brain atrophy resulting from his chronic pain.

AO72A
(Rev. 8/82)

reasoning; abstract thought; and general fund of information remained intact and his mental symptoms were expected to result in only minimal limitations in his activities of daily living. Clearly, Plaintiff was capable of performing work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct, and concrete.

Plaintiff also contends that the ALJ failed to incorporate Dr. Kendrick's physical findings into the RFC determination and did not consider his foot and ear pain. However, as previously noted, Dr. Kendrick determined that Plaintiff's objective findings did not support his subjective complaints.[4] And, although Plaintiff had alleged disability since May 1, 2005, in July 2008, he told a physician at Mediquick that he had done well the previous two years, without problems until he bent over to pick up a pool filter in late June 2008. Tr. 268-269, 273, 467. Clearly, this goes against his credibility.

An orthopedic evaluation also failed to provide support for Plaintiff's argument. Dr. Ted Honghiran reported that Plaintiff was able to dress and undress himself with no problem. Although he had a limited range of motion in his lumbar spine and a positive straight leg raise test, he had no muscle atrophy, normal reflexes in both legs, and normal reflexes and sensation in both arms and hands. Tr. 600. Dr. Honghiran opined that Plaintiff would not be able to return to his previous work in construction, but made no statement regarding his ability to perform other work. And, while more recent medical records do show that Plaintiff sought out medical treatment for pain on several occasions, activities such as working, attending a semester of college, living alone, preparing simple meals, walking in the woods (uneven surfaces), clearing brush on his friend's property, driving a stick shift vehicle, and fishing after his alleged onset date further call into question Plaintiff's credibility and undermine his claim of disability. Tr. 599, 629-630.

---

[4]We can also find no indication that Dr. Kendrick ever recommended Plaintiff undergo surgery, as Plaintiff alleged to Dr. Chitsey.

8

As for his foot and ear pain, we find the medical evidence to be lacking with regard to these impairments. His ear pain began in July 2010, when he was initially diagnosed with an infection in his left ear and later his right. Antibiotics and ear drops were prescribed. A CT scan of his head revealed some abnormal findings, resulting in Plaintiff being referred to an Ear, Nose, and Throat specialist in Little Rock. Dr. John Dornhoffer examined Plaintiff and noted that a portion of his mastoid tip had been fractured off and was anteriorly displaced. Ultimately, he diagnosed him with a benign old fracture of the mastoid tip, which was not causing him problems, and told to return only on an as needed basis. There is no indication Plaintiff returned for additional treatment or presented in the ER for treatment involving his ears after this date. *See Forte*, 377 F.3d at 895. Accordingly, we believe that Plaintiff's pain and limited range of motion were properly accounted for in the ALJ's determination that Plaintiff could perform only sedentary work involving occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 352.

Plaintiff also asserts that the ALJ erred by faulting him for failing to seek consistent medical treatment and participate in physical therapy when he had no money to do so. A lack of funds may justify a failure to receive medical care. *Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003). However, a lack of funds alone will not excuse a Plaintiff's failure to obtain treatment or follow medical advice. The Secretary's regulations also provide that a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits. 20 C.F.R. § 404.1518 (1980); 20 C.F.R. § 404.1530 (1983). Generally speaking, a lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). As the record contains no evidence to indicate that Plaintiff was ever denied treatment due to his lack of finances or sought out assistance from medical clinics offering care to indigent or low-income individuals, we can not say that his failure to

9

obtain more consistent treatment is excused.[5] *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (no evidence claimant was ever denied medical treatment due to financial reasons).

Lastly, Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to comply with the Court's remand order. Specifically, our order directed the ALJ to obtain RFC assessments from Drs. Chitsey and Kendrick. The record reveals that the ALJ attempted to comply with our order, but Dr. Chitsey failed to respond to the ALJ's request and Dr. Kendrick refused to provide an opinion. Tr. 357, 462-466. Given this, remanding the case a second time would be futile. Accordingly, we find that substantial evidence supports the ALJ's determination that Plaintiff is not disabled.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of December 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

---

[5] And, we note that this was not the only justification used by the ALJ to bolster his credibility determination. As previously discussed, Plaintiff's activities and the lack of objective medical to support his contentions weighed against him.